UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YES LIFTS, LLC d/b/a/ YALE EQUIPMENT & SERVICES, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | 10 C 4828 |
| vs. | ) ) | Judge Feinerman |
| NORMAL INDUSTRIAL MATERIALS, INC. d/b/a/ INDUSTRIAL METAL SUPPLY, a California corporation, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff YES Lifts, LLC d/b/a Yale Equipment & Services, LLC ("YES Lifts") brought this diversity action against Norman Industrial Materials, Inc. d/b/a Industrial Metal Supply ("IMS"). IMS has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). The motion is denied.

**Background**

In August 2000, IMS leased six forklifts from Yale Materials Handling of Illinois, Inc. ("YMHI"), which at the time was a dealer of forklifts manufactured by Yale Materials Handling Corporation ("YMHC"). The lease set forth general terms and conditions, while schedules to the lease listed the leased equipment and set forth the lease term, the required monthly lease payments, a purchase option, and other provisions. (For ease of reference, and unless indicated otherwise, the lease and schedules together will be referred to as the "Lease.") The Lease obligated IMS to inspect, repair, and return the six forklifts at the conclusion of the lease term in November 2005, with failure to do so creating a month-to-month lease under which IMS's

-1-

obligations, including its obligation to pay monthly rent, would continue. At the time the Lease was executed, YMHI assigned all its ownership rights in the Lease and the forklifts to non-party NMHG Financial Services, Inc. ("NMHG"), a Delaware corporation located in Connecticut. On January 30, 2002, YMHI and NMHG executed a Residual Value Guaranty Agreement, which obligated YMHI to repurchase the forklifts from NMHG when the lease term ended in November 2005. In 2005, YES Lifts replaced YMHI as the local dealer of YMHC equipment.

IMS made the initial lease payment to YMHI in Illinois; all other lease payments through November 2005 were sent to NMHG. When the Lease terminated in November 2005, IMS retained possession of the forklifts but stopped paying rent. In October 2006, having replaced YMHI as the local YMHC dealer, YES Lifts succeeded to YMHI's interest in the six forklifts, the Lease, and the Residual Value Guaranty Agreement. According to an affidavit submitted by its President, Kal Anglewicz, YES Lifts repurchased the forklifts from NMHG in December 2006. On April 11, 2007, IMS paid YES Lifts $49,591 in overdue rent. To date, IMS has not returned the forklifts and has not made any further rent payments.

YES Lifts filed this lawsuit on August 2, 2010. The suit alleges that YES Lifts owns the forklifts and has repeatedly notified IMS of its lease obligations, but that IMS ceased making rent payment and refused to return the forklifts. The amended complaint sets forth two counts: a common law contract count alleging that IMS breached the Lease, and an account stated claim for $123,732 in unpaid rent.

## Discussion

IMS has moved to dismiss on several grounds: (1) under Rule 12(b)(1) because YES Lifts lacks standing; (2) under Rule 12(b)(2) because IMS is not subject to personal jurisdiction in Illinois; (3) under Rule 12(b)(3) because the Northern District of Illinois is an improper venue;

and (4) under Rule 12(b)(6) because YES Lifts failed to state a contract claim as to one of the six forklifts, and failed to state an account stated claim. Each ground is considered in turn.

## I. Standing

IMS's challenge to YES Lifts' standing implicates the court's subject matter jurisdiction, and thus is addressed first. *See Citizens Against Ruining the Env't v. EPA*, 535 F.3d 670, 675 (7th Cir. 2008). In considering a Rule 12(b)(1) motion, the court may look beyond the complaint's jurisdictional allegations and consider evidence submitted by the parties. *See Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003). Where the defendant produces evidence casting doubt on the plaintiff's standing, "[t]he presumption of correctness … accord[ed] to a complaint's allegations falls away," *Commodity Trend Serv., Inc. v. CFTC*, 149 F.3d 679, 685 (7th Cir. 1998), and the plaintiff bears the burden of proving that standing exists, *see Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

IMS contends that YES Lifts does not have standing because the Schedules show that YMHI assigned to NMHG all of its rights, title, and interest in the forklifts in 2000, and because the amended complaint attaches no evidence that YES Lifts obtained any ownership of or interest in the forklifts. YES Lifts was not obligated to attach to the complaint evidence demonstrating its ownership in the forklifts. *See Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002) ("federal courts, unlike Illinois state courts, do not require that critical documents be attached to the complaint"). However, because evidence cited by IMS (the Schedules) shows that NMHG possessed all rights in the forklifts and Lease for at least some period of time, YES Lifts must adduce evidence to prove its standing.

YES Lifts has satisfied its burden. As noted above, YES Lifts submitted an affidavit from Kal Anglewicz, its President, averring that YES Lifts purchased the forklifts from NMHG

in December 2006. YES Lifts also submitted: (1) a letter agreement for the repurchase of the forklifts; (2) payment statements and check stubs for the purchase; and (3) a letter from NMHG confirming receipt of payment. IMS argues that Anglewicz's affidavit fails to establish a "link between the subject forklifts and YES Lifts," and that it instead "interweaves a myriad of corporate names in an apparent attempt to establish standing." Doc. 28 at 5. IMS discounts the letter agreement because it is addressed not to YES Lifts, but to YES, Inc., a non-party to this litigation. IMS also argues that the payment statements, check stubs, and confirmation statement fail to identify which entity (YES Lifts or YES, Inc.) paid to repurchase the forklifts.

IMS's submissions fail to persuade. Although the letter agreement identifies YES, Inc. as the party, it is addressed to Kal Anglewicz, President of YES Lifts. Moreover, by its express terms, the letter agreement applies not only to YES, Inc., but also to any "affiliated company" that becomes an "authorized dealer" of YMHC equipment in the region. Doc. 27-3 at 1. As noted above, YES Lifts replaced YMHI as the authorized YMHC dealer in 2005. In addition, IMS made a back rent payment to YES Lifts in April 2007, thus implicitly recognizing that YES Lifts owns the forklifts. Finally, and most significantly, Anglewicz expressly averred that YES Lifts purchased the forklifts. Taken together, the evidence sufficiently establishes, for purposes of standing, that YES Lifts has an interest in the forklifts and the Lease. *See Capital Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (district court properly considered affidavit in resolving jurisdictional motion); *Sierra Club v. EPA*, 292 F.3d 895, 899-901 (D.C. Cir. 2002) (plaintiff may establish standing by "appending to its filing additional affidavits").

II.     **Personal Jurisdiction**

Because this is a diversity case, the court has personal jurisdiction only to the extent an Illinois state court would. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760

(7th Cir. 2008).  The Illinois long-arm statute permits a court to exercise personal jurisdiction "on any … basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."  735 ILCS 5/2-209(c).  Because "there is no operative difference between these two constitutional limits," a court evaluating a Rule 12(b)(1) motion asks "whether the exercise of personal jurisdiction would violate federal due process."  *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted).

"Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Ibid.* (citation and internal quotation marks omitted).  The Supreme Court has "framed the constitutional inquiry in terms of whether the defendant purposefully avails itself of the benefits and protections of conducting activities in the forum state."  *Id.* at 444 (internal quotation marks omitted).  To be subject to personal jurisdiction, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum state' must be such that it should 'reasonably anticipate being haled into court there.'"  *Citadel Grp.*, 536 F.3d at 761 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).  The court must "consider the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contact and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts."  *Ibid.* (quoting *Burger King*, 471 U.S. at 479).

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts."  *Mobile Anesthesiologists Chicago*, 623 F.3d at 444.  Specific jurisdiction

exists "for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). IMS argues that specific jurisdiction does not lie here because (1) YMHI solicited the Lease by becoming a preferred supplier to the North American Steel Alliance ("NASA"), a purchasing cooperative to which IMS belonged; (2) all rights in the forklifts and Lease were transferred to NMHG, a non-Illinois entity, immediately upon the Lease being signed; (3) no meaningful performance took place in Illinois; (4) no IMS agent or employee physically visited Illinois; and (5) the forklifts were used exclusively in California and Arizona.

To determine whether IMS is subject to personal jurisdiction, the court must accept YES Lifts' undenied factual allegations and resolve all factual disputes in its favor. *See Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1245 (7th Cir. 1990). Although YMHI may have placed itself on a list of NASA preferred suppliers, it was IMS that initiated direct contact with YMHI and first solicited the Lease. A defendant's solicitation of business with the plaintiff is a factor supporting jurisdiction, even where the solicitation "amounted to no more than a single communication that initiated negotiations of the transaction at issue." *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1203 (7th Cir. 1985).

In addition, IMS negotiated the Lease via telephone, mail, and fax communications to YMHI in Illinois; sent the signed Lease to YMHI in Illinois; sent the initial lease payment to YMHI in Illinois; disputed the lease terms via communications to YMHI in Illinois; and submitted a payment for back rent to YES Lifts in Illinois. Together, these actions show that IMS purposefully availed itself of an Illinois forum, thus warranting the exercise of specific jurisdiction. *See Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 283-84 (7th Cir. 1990) (personal jurisdiction existed where defendants "reached out" to plaintiffs

through telephone calls and mailings); *Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, 2008 WL 4104357, at *5 (N.D. Ill. Aug. 25, 2008) ("even when [contract-related] contact takes place only via telephone or email, it can create a substantial connection between the defendant and the forum state"); *Preussag Int'l Steel Corp. v. Ideal Steel & Builders' Supplies, Inc.*, 2004 WL 783102, at *4 (N.D. Ill. Jan. 21, 2004) (where defendant contacted plaintiff by mail and telephone to place orders, dispute invoices, negotiate terms, and submit payment, there were sufficient contacts to satisfy due process); *Zarky v. Laticrete Int'l, Inc.*, 1982 U.S. Dist. LEXIS 14778, at *19-20 (N.D. Ill. Sept. 1, 1982) ("defendants' contacts with Illinois satisfy the due process prerequisites to the exercise of jurisdiction over them; defendants' solicitation of the contract in Illinois and subsequent negotiations in Illinois by telephone and written correspondence, *inter alia*, establishes the foreseeability of litigation here that is critical to due process analysis").

### III. Venue

Venue in diversity cases is governed by 28 U.S.C. § 1391(a), which provides, in relevant part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in … (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

Venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred," not just in the district with "the most substantial contacts." *Celozzi v. Boot*, 2000 WL 1141568, at *5 (N.D. Ill. Aug. 11, 2000). "In ruling on a motion to dismiss for lack of venue, the court should take all allegations in the complaint as true (unless contradicted by affidavit), draw all reasonable inferences in favor of plaintiff, and may examine facts outside

the complaint." *Johnson-Ester v. Schwarzenegger*, 2010 WL 1257787, at *2 (N.D. Ill. Mar. 25, 2010); *see also Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

IMS contends that venue is improper in the Northern District of Illinois because the forklifts are in California, any breach occurred in California, and the substantial part of the events relating to the lease occurred in California. However, because IMS sent numerous Lease-related communications and payments to YMHI and YES Lifts in this District, YES Lifts has demonstrated that a substantial part of the events giving rise to its claims occurred here. *See Fogelson v. Iatrides*, 2000 WL 631293, at *3 (N.D. Ill. May 12, 2000) (venue satisfied by "a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action") (citations omitted). Venue therefore is proper in this District. *See Celozzi*, 2000 WL 1141568, at *6 (venue proper where defendant placed telephone calls and sent faxes to district); *Sacody Techs., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) (venue proper where defendant sent faxes and signed agreement into district).

## IV.   Failure to State a Claim

To survive a Rule 12(b)(6) motion, a complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation and internal quotation marks omitted). The court need not accept as true "abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Where the well-pleaded facts "do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks omitted). The Lease does not have a choice-of-law provision, but the parties assume that Illinois law governs, so the court will as well. *See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998).

IMS contends that YES Lifts failed to properly allege a contract claim with regard to one of the six forklifts because the Schedules attached to the complaint reference only five of the forklifts. As noted above, however, YES Lifts had no obligation to attach the Schedules to the complaint. *See Arnold*, 215 F. Supp. 2d at 962. A complaint need only provide a "short and plain statement of the claim." Fed. R. Civ. P. 8(a). The amended complaint satisfies this requirement by alleging that YES Lifts owns all six forklifts and that IMS has failed to make the rent payments required by the Lease. For good measure, YES Lifts attached to its response brief the Schedule for the sixth forklift, eliminating any doubt on the subject.

Second, IMS argues that YES Lifts failed to state a claim for an account stated. "An 'account stated' determines the amount of a preexisting debt when parties who previously have conducted monetary transactions agree that there truly is an account representing the transactions between them." *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009). Where a party fails to object to an account invoice within a reasonable time, an account stated is established. *See U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009). Whether an account stated exists ultimately is a question of fact. *See id*. at 333; *Dreyer Med. Clinic., S.C. v. Corral*, 591 N.E.2d 111, 114 (Ill. App. 1992).

IMS contends that YES Lifts has not properly alleged an account stated claim because the documents attached to the amended complaint do not establish the existence of an account

stated as a matter of law. IMS adds that YES Lifts attached an "exemplar invoice" to its amended complaint rather than every invoice that it alleges has gone unpaid. Finally, IMS contends that YES Lifts failed to cite legal support for its "implied proposition" that the filing of a complaint is sufficient to assert an account stated theory.

IMS's contentions are without merit. For purposes of surviving a Rule 12(b)(6) motion, YES Lifts need not establish as a matter of law that it will succeed, *see Tamayo*, 526 F.3d at 1084, and need not attach all relevant invoices to its complaint, *see Arnold*, 215 F. Supp. 2d at 962. The amended complaint alleges that a Lease exists between the parties; that monetary transactions occurred during and after the five-year lease term; that IMS received monthly account invoices after the lease term expired in November 2005 and failed to object to them, even sending YES Lifts payment for back rent in April 2007; that IMS has refused to pay the account stated on the remainder of the invoices; and that the balance of the unpaid statements totals $123,732. Together, these allegations are sufficient to state an account stated claim. *See Allied Metal Co. v. Edgerton Metal Prods, Inc.*, 908 F. Supp. 2d 576, 579 (N.D. Ill. 1995); *Lexecon, Inc. v. Tracinda Corp.*, 1991 WL 152522, at *8 (N.D. Ill. July 24, 1001).

**Conclusion**

For these reasons, IMS's motion to dismiss is denied. IMS shall answer the amended complaint by May 20, 2011.

May 9, 2011

United States District Judge